*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0030P (6th Cir.)
File Name: 03a0030p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

RICHARD MARKVA, DEANNA
MARKVA, BEVERLY
LANGSDON, and PEGGY
OTLER, on behalf of
themselves and all others
similarly situated,
      *Plaintiffs-Appellees,*


*v.*


JAMES K. HAVEMAN, JR., in
his official capacity as
Director, Michigan
Department of Community
Health, and DOUGLAS E.
HOWARD, in his official
capacity as Director,
Michigan Family
Independence Agency,
      *Defendants-Appellants.*

No. 01-2509

Appeal from the United States District Court
for the Eastern District of Michigan at Bay City.
No. 00-10437—David M. Lawson, District Judge.

Argued: April 25, 2002

Decided and Filed:  January 27, 2003

Before:  DAUGHTREY and MOORE, Circuit Judges;
ECONOMUS, District Judge.*

––––––––––––––––––

**COUNSEL**

**ARGUED:**    William  R.  Morris,  OFFICE  OF  THE
ATTORNEY GENERAL, SOCIAL SERVICES DIVISION,
Lansing,  Michigan,  for  Appellants.    Jacqueline  Doig,
CENTER FOR CIVIL JUSTICE, Saginaw, Michigan, for
Appellees.  **ON BRIEF:**  William R. Morris, OFFICE OF
THE   ATTORNEY   GENERAL,   SOCIAL   SERVICES
DIVISION, Lansing, Michigan, for Appellants.  Jacqueline
Doig, Terri L. Stangl, CENTER FOR CIVIL JUSTICE,
Saginaw, Michigan, for Appellees. Rochelle Bobroff, AARP
FOUNDATION   LITIGATION,   Washington,   D.C.,   for
Amicus Curiae.

––––––––––––––––––

**OPINION**

––––––––––––––––––

MARTHA CRAIG DAUGHTREY, Circuit Judge.  This
appeal arises from a class-action challenge to that portion of
the Michigan Medicaid plan's methodology for calculating
eligibility and benefits for relatives caring for dependent
children that treats non-parents differently from parents.
Under Michigan's plan, "medically needy" caretakers of
dependent children must incur a specific amount of monthly
out-of-pocket expenses for medical care before they are
eligible to receive Medicaid benefits: the higher an applicant's
"countable" household income, the more money the applicant
must "spend down" before benefits are available.  When a

––––––––––

* The Honorable Peter C. Economus, United States District Judge for
the Northern District of Ohio, sitting by designation.

parent caretaker applies for Medicaid, Michigan allows the parent to exclude from countable income an amount allocated for the care of the dependent children. However, those non-parent relatives acting as caretakers who apply for Medicaid are not entitled to deduct a similar portion from their income to reflect the financial needs of the children under their care. As a result, non-parent caretakers pay a higher deductible in order to receive Medicaid benefits than do parent caretakers.

This suit was brought by a class of "medically needy" grandparents who are raising their grandchildren because the children's parents have died or are otherwise absent. On behalf of themselves and similarly-situated non-parent relative caretakers, the plaintiffs sued the directors of the Michigan Department of Community Health and the Michigan Family Independence Agency under 42 U.S.C. § 1983, arguing that Michigan's policy of calculating Medicaid eligibility and benefit levels differently for non-parent and parent caretakers violates the federal Medicaid law and its implementing regulations. The defendants maintain that the distinction between parent and non-parent caretakers is justified because parents, unlike non-parent relatives, are *legally* responsible for the children's financial needs.

Although the district court agreed with the defendants that Michigan's interpretation of the Medicaid statutes was not altogether unreasonable from a policy standpoint, the court held nonetheless that the policy, as implemented, violates several specific provisions of those statutes and the regulations promulgated pursuant to them. The district court therefore awarded summary judgment to the plaintiffs and permanently enjoined the defendants from using a methodology for non-parent relative caretakers that differs from the methodology used for parent caretakers. *See Markva v. Haveman*, 168 F. Supp. 2d 695, 717 (E.D. Mich. 2001).

On appeal, the Michigan agencies argue that the district court erred in failing to interpret these statutory and regulatory provisions in the context of the entire web of benefits

provided to children and their caretakers. The defendants also argue that the plaintiffs have failed to demonstrate the injury necessary for standing because other welfare benefits that their grandchildren receive – benefits these children would not be entitled to receive if they were living with their parents – offset the increases in the plaintiffs' spend down obligations.

For the reasons set out below, we conclude that the district court properly interpreted and analyzed the relevant law. Accordingly, we affirm the district court's judgment.

### BACKGROUND

The federal Medicaid program, established by Title XIX of the Social Security Act, provides financial assistance to low-income individuals seeking medical care, pursuant to 42 U.S.C. § 1396. States receive federal assistance to administer their own individual Medicaid plans; however, in order for a state to receive federal assistance, its plan must meet the requirements of the Social Security Act and the regulations promulgated by the Secretary of Health and Human Services.

At issue here is the "caretaker relative eligibility" category for Medicaid benefits established by 42 U.S.C. § 1396d(a)(ii). *See Markva*, 168 F. Supp. 2d at 714. "Caretaker relatives" are adults – parents or other close relatives – with whom a "dependent child"[1] is living. *See id.* at 702. The named plaintiffs in this case are grandparents who are raising one or more of their grandchildren because their grandchildren's parents have died or are otherwise unable to care for them. *See id.* at 699-702. They are all "medically needy," meaning

---

[1] A dependent child is "a needy child (1) who has been deprived of parental support or care by reason of the death, continued absence from the home . . . , or physical or mental incapacity of a parent, and who is living with his father, mother, grandfather, grandmother, brother, sister, stepfather, stepmother, stepbrother, stepsister, uncle, aunt, first cousin, nephew, or niece, in a place of residence maintained by one or more of such relatives as his or their own home, and (2) who is (A) under the age of eighteen . . ." 42 U.S.C. § 606(a)(1995).

suffered an 'injury-in-fact' that is concrete, particularized, and actual or imminent; (2) the injury is fairly traceable to the conduct of the defendants; and (3) the requested relief would likely redress the injury suffered.'" *Markva*, 168 F. Supp. at 704 (citing *Friends of the Earth, Inc. v. Laidlaw Env. Servs.*, 528 U.S. 167, 180-181 (2000)). "The test for mootness is whether the relief sought would, if granted, make a difference to the legal interest of the parties." *Green v. Nevers*, 196 F.3d 627, 632 (6th Cir. 1999) (citations omitted).

Here, the plaintiffs have met all of the requirements for standing. First, the plaintiff non-parent caretakers must pay more for benefits than they would if their benefits were calculated in the same manner as those of parents, resulting in injury to their financial and medical well-being. Second, the higher spend-down requirements are caused by the defendants' policy of differentiating between parent and non-parent caretakers in calculating Medicaid eligibility and benefit levels. Third, the district court order would remedy this disparity. That the dependent children in this case may have received benefits from other sources that exceed the shortfall does not affect this result, because the non-parent caretakers still receive less than they would if their income were calculated in the same manner as that of parents. Whether enforcement of the district court's order would, as the defendants contend, "unfairly" benefit the dependent children in their care is, for purposes of standing, irrelevant. Finally, as the district court noted, attributing to the grandparents the Family Independent Program benefits the *children* receive would violate the anti-deeming provisions, even if the benefits arguably reduce the amount of money the grandparents have to spend to meet the grandchildren's non-medical expenses. *See Markva*, 168 F. Supp. 2d at 705.

### CONCLUSION

For the reasons set out above, we AFFIRM the judgment of the district court in all respects.

42 U.S.C. § 1396d(a)(ii).[4]  The district court properly found that the different methodologies used in determining eligibility and benefit amounts for parents and non-parents violated these provisions because they "result in non-parent caretakers being burdened with significantly higher spend down amounts than parent caretakers." *See Markva*, 168 F. Supp. 2d at 716.

The defendants contend that the equal in "amount, duration, and scope" requirement pertains only to the type of services offered – *e.g.* "whether a state Medicaid program may cover a particular service for some members of a group but not others" – and that in any event, this requirement prohibits only *unreasonable* distinctions.  However, we find no support in the statute or the case law for such a limited reading.

### Do the plaintiffs have standing?

Finally, the defendants argue that the plaintiffs lack standing to bring this suit because they receive additional public welfare benefits that exceed the differences in their "spend downs" and thus eliminate their injury-in-fact.  The district court properly rejected this  argument.

As the district court noted, "federal courts are empowered to adjudicate only 'cases' and 'controversies.'" *Markva*, 168 F. Supp. 2d at 704 (citing U.S. Const. art. III, § 2). Accordingly, plaintiffs must have a "concrete private interest in the outcome of the suit."  *See Lujan v. Defenders of Wildllife*, 504 U.S. 555, 573 (1992).  "To possess standing, a plaintiff seeking an injunction must show that (1) she has

---

[4]*See* 42 U.S.C. § 1396a(a)(10)(C) (stating that its provisions apply to "any group of individuals described in section 1396d(a) . . . "); 42 U.S.C. § 1396d(a)(ii) (defining covered individuals as "relatives specified in section 606(b)(1) of this title with whom a child is living if such child is (or would, if needy, be) a dependent child under part A of subchapter IV of this chapter"). *See also Markva*, 168 F. Supp. 2d at 714 ("It is uncontested that the plaintiffs in this [case] are in the 'caretaker relative' Medicaid eligibility group defined by 42 U.S.C. § 1396(a)(ii).  Parents and grandparents are both members of that group.")

that although their incomes are too high to entitle them to cash assistance under general welfare programs, they nonetheless qualify for Medicaid because their incomes do not cover the costs of the medical care they need. *See id.* at 702-03. "Medically needy" individuals qualify for Medicaid by showing that their "countable income" minus their medical expenses falls below the applicable income limit, called the "protected income level."  If an applicant's income exceeds the protected income level, then Medicaid benefits are not triggered until the applicant incurs a specific amount of monthly out-of-pocket expenses for medical care. *See id.* at 699.  This deductible, referred to throughout this litigation as the "spend down," is calculated as the difference between the applicant's countable income and the protected income level. *See* 42 C.F.R. § 435.831.

Michigan's Family Independence Agency's Program Eligibility Manual sets forth the policies that govern the "caretaker relative" Medicaid category for recipients in that state.  In calculating eligibility and benefit levels for those within this category, Michigan does not include dependent children living in the home within the caretaker's family group for Medicaid purposes.  Accordingly, the protected income level of each caretaker does not rise with the number of children living in the household.  However, when a *parent* caretaker applies for "caretaker relative" Medicaid, the Michigan agencies reduce the amount of the parent caretaker's countable (or "budgeted") income by a pro rata amount to account for the needs of each of his or her children. *See Markva*, 168 F. Supp. 2d at 699, 701-03. Because parent caretakers whose budgeted income exceeds their protected income are required themselves to pay medical expenses equal to the difference between the two (the so-called "spend down"), a lower budgeted income means a lower spend-down obligation.

The Michigan agencies do not apply this proration methodology to caretakers who are *not* the biological or adoptive parents of the children under their care.   In calculating the spend-down amount that a non-parent relative

caretaker is required to incur before she can receive Medicaid benefits, the defendants do not deduct from the caretaker's budgeted income an amount attributable to the financial needs of the dependent children under his or her care. *See id.* at 699, 701-03. As a result, "caretaker relative" Medicaid applicants who are the *parents* of the children under their care are entitled to greater benefits than otherwise similarly-situated "caretaker relative" Medicaid applicants who are not the biological or adoptive parents of the children in their household. The plaintiffs argue that Michigan's policy of treating parent and non-parent caretaker relatives differently violates the federal Medicaid statute and its implementing regulations.

In granting summary judgment to the plaintiffs, the district court held that the defendants' policy of using different methodologies violated federal Medicaid law in three respects. First, the district court held that the defendants' policy violated 42 U.S.C. § 1396a(a)(10)(C)(i)(III) and 42 C.F.R. § 435.601(d)(4), which require states to use a "comparable" methodology to determine the benefits for "all persons within each category of assistance . . . within an eligibility group" – in this case, all medically-needy relative caretakers, whether parent or non-parent. *See Markva*, 168 F. Supp. 2d at 714-716. Second, the district court found that the policy violated 42 U.S.C. § 1396(a)(10)(C)(i)(II) and 42 C.F.R. § 440.240(b)(2), which require states to provide services that are "equal in amount, duration, and scope for all recipients within the group" of medically needy relative caretakers. *See Markva*, 168 F. Supp. 2d at 716. Third, the district court held that the policy violated 42 U.S.C. § 1396a(a)(10)(C)(i)(III) and 42 C.F.R. § 435.601(d)(2), as modified by 42 U.S.C. § 1396u-1(a), which require states to use a methodology for determining Medicaid eligibility of non-parent relative caretakers that is no more restrictive than the methodology in effect on July 16, 1996, to determine cash assistance eligibility for the most closely-related categorically needy group. *See Markva*, 168 F. Supp. 2d at 717-18. However, the district court rejected the plaintiffs' claim that the defendants' policy violated the requirement in

state's plan is *reasonable* from a policy standpoint but, rather, whether it complies with the requirements Congress provided in the Medicaid statute and regulations.[3] The district court properly found that Michigan's policy failed to meet these requirements.

The district court also found, correctly, that the methodology used by the defendants to determine plaintiffs' eligibility is in compliance with 42 U.S.C. § 1396a(a)(17), which requires that the defendants *reasonably* evaluate an applicant's resources and consider "only such income and resources" that are "available to the applicants." *Markva*, 168 F. Supp. 2d at 716-17. As discussed above, a distinction between parent and non-parent relative caregivers is not *per se* unreasonable; different methods of calculating the "income and resources" available to parent and non-parent relative caregivers is likewise not *per se* unreasonable, but is illegal in this instance because it violates other provisions of the applicable statutes and regulations.

The district court was also correct in determining that the defendants' policy violated 42 U.S.C. § 1396a(a)(10)(C)(i)(II) and 42 C.F.R. § 440.240(b)(2), which require states to provide equal "amounts, duration, and scope" of Medicaid coverage to similarly situated caretaker relatives. Under 42 U.S.C. § 1396a(a)(10)(C)(i)(II), Medicaid plans are required to include a description of "the amount, duration, and scope of medical assistance made available to individuals in the group." The "covered medically needy group" in this case is Michigan's "caretaker relative" eligibility group defined by

---

[3] The defendants' argument that enforcement of the district court's order would unfairly benefit the dependent children under the care of non-parent caretakers because these children already receive Family Independence Program benefits that they would not be eligible to receive if they were living with their parents fails for the same reason.

discern the rationale behind Congressional policy, however, because the outcome is clearly reflected in the applicable statutes, to the extent that anything within the federal social welfare legislation can be deemed "clear."

*Markva*, 168 F. Supp. 2d at 715 (citations omitted). On appeal, the defendants offer no authority that requires us to reverse the district court on this issue.

The defendants also argue that the district court erred in failing to consider the effect of 42 C.F.R. § 435.601(c), the regulation noted above that provides simply that "the agency must use the requirements for financial responsibility of relatives specified in § 435.602." The district court did*,* however, consider and discuss the financial responsibility requirements of 42 C.F.R. § 435.602, as well as the anti-deeming provision in the statute itself, 42 U.S.C. § 1396a(a)(17)(D), on which the regulations are based. After considering these provisions, the district court rejected the defendants' argument that these provisions prohibited or otherwise excused them from complying with the other requirements of the statute. *See Markva*, 168 F. Supp. 2d at 715-16. On appeal, the defendants do not offer a compelling explanation for why 42 C.F.R. § 435.601(c) would provide any more support for their argument than do the provisions to which it refers.[2]

Finally, Michigan argues that even if the anti-deeming provision does not *require* the state to treat parents and non-parents differently, it means that such a distinction is reasonable. However, as the district court noted in the passage cited above, the relevant inquiry is not whether the

---

[2]The defendants argue that 42 C.F.R. § 435.601(c) -- unlike 42 C.F.R. § 436.602 -- must have been intended to govern the determination of *caretaker relatives'* eligibility for benefits (rather than simply *dependent children's* eligibility for benefits) because otherwise 42 C.F.R. § 435.601(c) would be a "needless repetition" of 42 C.F.R. § 436.602. However, a better reading of the statutory provisions indicates that 42 C.F.R. § 435.601(c) simply cross-references 42 C.F.R. § 435.602 in order to make the relationship between these requirements explicit.

42 U.S.C. § 1396a(a)(17) that the state "reasonably evaluate" an applicant's resources, finding that the defendants' policy was "not unreasonable *per se*." *See Markva*, 168 F. Supp. 2d at 716-17.

As a result, the district court permanently enjoined the defendants from "using a methodology to determine the Medicaid eligibility and benefit amount, including the monthly spend down amount, for the plaintiffs and the members of the [certified class] that is different from the methodology used to determine the Medicaid eligibility and benefit amounts, including spend down amounts, for medically needy parent relative caretakers." The court also ordered the defendants to provide interim and final notification to all class members of the procedures necessary to obtain the correct amount of benefits.

Following the filing of the defendants' notice of appeal, the district court denied their request for a stay, but we subsequently reversed that order and entered a stay of the injunction pending appeal.

### DISCUSSION

We review *de novo* a district court's order granting summary judgment, *see Johnson v. Econ. Dev. Corp.,* 241 F.3d 501, 509 (6th Cir. 2001), and we affirm "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When reviewing a motion for summary judgment, we view the evidence (and draw all reasonable inference therefrom) in the light most favorable to the non-moving party. *See Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

To prevail on a claim brought under 42 U.S.C. § 1983, the plaintiffs must prove that the defendants acted "under color of law" and that the defendants' conduct deprived them of a right, privilege or immunity secured by the Constitution or the laws of the United States. *See Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999) (citing *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155-56 (1978)). The defendants do not dispute that they acted under color of law. Rather, they contest the district court's determination that their failure to extend the proration methodology to non-parent as well as parent caretakers violated several provisions of the Medicaid statute and implementing regulations.

### *Does Michigan's policy violate Medicaid statutory provisions and regulations?*

The plaintiffs allege that the defendants' policy violated 42 U.S.C. § 1396a(a)(10)(C)(i)(III) and 42 C.F.R. § 435.601(d)(4), which provide that if a state adopts a methodology to calculate Medicaid benefits that is "less restrictive" than the one used for determining eligibility for the related cash assistance program in effect on July 16, 1996, then that methodology must be "comparable" for all applicants within an eligibility group. The plaintiffs also allege that Michigan's policy violated 42 U.S.C. §§ 1396a(a)(10)(C)(i)(III) and 1396a(r)(2), as modified by 1396u-1(a), and 42 C.F.R. 435.601(d)(2), which provide that the methodology used to determine Medicaid eligibility and benefit levels for relative caretakers must not be more restrictive than the methodology in effect on July 16, 1996, to determine cash assistance eligibility for the most closely-related categorically needy group. The district court agreed with the plaintiffs on both counts. On appeal, the defendants contend that by not addressing these provisions in context, the district court failed to recognize that extension of the proration policy to non-parent caretakers would actually *violate* the Medicaid statute and implementing regulations. We are unpersuaded by this argument.

argument: Medicaid's anti-deeming provisions clearly prohibit the state from attributing to an applicant the income of household members who are neither the applicant's spouse or parent. However, the second half of the state's argument – that because the income of non-parent caretakers cannot be deemed that of the children under their care, "the reverse must also be true," in other words, the non-parent caretakers' child-care expenses cannot be deducted from the caretakers' income in calculating the *caretakers'* eligibility for Medicaid – does not follow. As the district court convincingly explained:

> The defendants' argument that the "anti-deeming" statute, 42 U.S.C. § 1396a(a)(17)(D), and the corresponding regulations, 42 C.F.R. § 435.602(1), prohibit them from prorating grandparents' income to account for a share for a dependent grandchild is based on an assumption that the defendants *must* utilize a *quid pro quo* approach within the family unit. The defendants have cited no authority which supports their claim that they must adopt such an approach. Although it may be reasonable to treat income that is "unavailable" to one person within a family unit as being "available" to another person in that unit, the federal Medicaid statutes and regulations do not compel such symmetry. To the contrary, the statutory provisions noted above *require* the state agency to treat parent and non-parent caretaker applicants comparably, but they prohibit the state agency from treating the respective children in their care the same way.

> There are many reasons why this distinction might be justified. For instance, it may be that older caretakers such as grandparents could have a greater need for medical care than younger caretakers such as parents. The difference in approaches might also reflect the fact that non-parent relative caretakers have no legal obligation to support the dependent child, and it is necessary to avoid a disincentive to those non-parents who might question the ability to take in the child and provide for their own needs as well. The Court need not

include reasonable standards . . . for determining eligibility for and the extent of medical assistance under the plan which . . .

(D) do not take into account the financial responsibility of any individual for any applicant or recipient of assistance under the plan unless such applicant or recipient is such individual's spouse or such individual's child who is under 21 . . . .

Under the heading "Financial responsibility of relatives," 42 C.F.R. § 435.601(c) provides simply that "the agency must use the requirements for financial responsibility of relatives specified in § 435.602." The regulation in 42 C.F.R. § 435.602, in turn, provides:

Financial responsibility of relatives and other individuals.

(a) Basic requirements. Subject to the provisions of paragraphs (b) and (c) of this section, in determining financial responsibility of relatives and other persons for individuals under Medicaid, the agency must apply the following requirements and methodologies:

*(1) Except for a spouse of an individual or a parent for a child who is under age 21 or blind or disabled, the agency must not consider income and resources of any relative as available to an individual.* (Emphasis added).

This anti-deeming rule means that the state, in calculating dependent *children's* eligibility for Medicaid, is not allowed to consider non-parent caretakers financially responsible for the children under their care. The defendants argue that because the state is not allowed to assume, when calculating dependent children's eligibility for benefits, that non-parent caretakers will contribute financially to the dependent children in their household, the state is likewise not allowed, when calculating *non-parent caretakers'* eligibility for Medicaid, to deduct a share reflecting the financial needs of the dependent children in the non-parent caretakers' care. There is ample support for the first half of the defendants'

The provisions in question tie the methodology for determining eligibility for Medicaid groups to the methodology for determining eligibility for assistance under the welfare statutes in effect on July 16, 1996, the date on which the former Aid to Families with Dependent Children (AFDC) program was superceded by amendments to the Social Security Act. It is therefore necessary to understand how eligibility for AFDC benefits was determined prior to that date. Under the former AFDC methodology, benefit levels for *caretakers* – whether parents or non-parents – took into account the resources contributed by every member of the household *and* the needs of every member in the household, including children. For purposes of calculating the caretaker's benefits, parents and non-parents were treated identically. 42 U.S.C. § 602(a)(7)(A), (a)(38) (1995). It was only in the context of calculating the benefit levels for *children* that the former AFDC program treated parents and non-parents differently. If a family wanted to receive AFDC cash assistance for a child living at home with a parent, then the parent was *required* to apply for AFDC along with the child and the child's siblings. *See* 42 U.S.C. § 602(a)(38)(1995). Parents and children would necessarily all be considered part of the same AFDC group, meaning that the parents' income was always attributed to the child. If the child lived with a non-parent caretaker, however, the caretaker could choose whether to apply for AFDC with the child or whether to apply for AFDC for the child only. If the caretaker received little or no income, she would likely choose to be included in the child's AFDC group, for larger groups received greater assistance. On the other hand, if the caretaker's income was above a certain level, she would most likely choose to apply for AFDC benefits for the child only, so that the child would not be disqualified based on the non-parent caretaker's income. Michigan refers to this difference in the treatment of parents and non-parents under AFDC as the "financial responsibility distinction."

Michigan's current proration policy, adopted in 1999, is less restrictive than the policy in effect on July 16, 1996, in two respects. First, whereas the prior methodology in

"assume[d] that all (100%) of a parent[s] income was available to meet the needs of each child[,]" the 1999 revision, in effect at the time that this action was filed, "apportioned a parent's income among the spouse and children supported by that parent." *Markva*, 168 F. Supp. 2d at 715. Second, under the 1999 provision, unlike the earlier one, "income deemed available to a child for the purpose of assessing the child's eligibility for benefits is deemed *unavailable* to the parent when assessing the parent's own eligibility for benefits." *See id.*

On appeal, the defendants do not dispute that the current policy is less restrictive than the policy in effect on July 16, 1996. Rather, they take issue with the district court's finding that the current policy is not "comparable" for all members of the eligibility group. The defendants argue that eligibility requirements and benefit levels *are* comparable for parent and non-parent caretakers "to the extent they are financially responsible for children in their care." They cite the so-called "financial responsibility distinction" recognized in the AFDC program as precedent for treating parents and non-parents differently under the Medicaid program.

We conclude that this argument is without merit. Both parents *and* non-parents who care for dependent children are members of the "caretaker relative Medicaid eligibility group" defined by 42 U.S.C. § 1396d(a)(ii). *See Markva*, 168 F. Supp. 2d at 714 (citing 42 U.S.C. § 606(a)(1995)). There is simply no basis in the relevant statute or regulations to distinguish among individuals in the "medically needy" "caretaker relative" group based on financial responsibility or any other such criteria. *See* 42 U.S.C. § 1396a(a)(10)(C)(i)(III) (a Medicaid plan must include a description of *"the single standard* to be employed in determining income and resource eligibility for all such groups, and the methodology to be employed in determining such eligibility . . ." ) (emphasis added); 42 C.F.R. § 435.601(d)(4) ("The less restrictive methodology applied under this section must be comparable for all persons within

each category of assistance (aged, or blind, or disabled, or AFDC related) within an eligibility group.").

The district court also properly found that the current methodology  for determining Medicaid benefits for *non-parent* caretakers is more restrictive than the pre-July 1996 methodology for determining AFDC benefits for this class. Under the former methodology, benefit levels for non-parent caretakers, like parents, were determined with reference to the income and needs of everyone in the household, including children. Under the current methodology used for *non-parent* caretakers, by contrast, neither the income nor the needs of the children are taken into account in calculating the caretakers' benefits, and neither the income nor the needs of the caretakers are taken into account in calculating the children's benefits. As a result, as the district court found, "the smaller group size for current non-parent applicants protects less income and results in fewer benefits due to the higher spend down amount that results." *Markva*, 168 F. Supp. 2d at 717-18. Thus, "[a]lthough children applicants for assistance in such households may be better off under the [superceding] methodology because non-parent income cannot be deemed available to them, those that care for them, such as the plaintiffs in this case, do not fare as well." *Id.* at 718. Because the current methodology for determining the Medicaid benefits of non-parent caretaker applicants is more restrictive than the pre-July 1996 methodology used to calculate AFDC benefits for the same group, the district court correctly found that the defendants' policy violated 42 U.S.C. § 1396a(a)(10)(C)(i)(III) and 42 C.F.R. § 435.601(d)(2).

Nor do we find any merit in the defendants' contention that the "anti-deeming" provisions of the federal Medicaid law – 42 U.S.C. § 1396a(a)(17)(D) and 42 C.F.R. §§ 435.601(c) and 435.602(a) – preclude them from extending to non-parent caretaker relatives the same proration methodology for considering the dependent children's needs that is used for determining parent caretakers' Medicaid eligibility. Under 42 U.S.C. § 1396a(a)(17), states are required to