**Willie CHAPPELL by Deuah SAVAGE, and Hager Bey by Ruth Bey, on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**Philip C. BRADLEY, in his official capacity as Director of the Illinois Department of Public Aid, Defendant.**

No. 91 C 4572.

United States District Court, N.D. Illinois, E.D.

Oct. 6, 1993.

Thomas D. Yates, Theodora Rand, Nelson Soltman, Joann Francine Villasenor, Legal Assistance Foundation of Chicago, Chicago, IL, for plaintiff.

Karen Elaine Konieczny, John E. Huston, Ill. Atty. Gen.'s Office, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

LEINENWEBER, District Judge.

Title XIX of the Social Security Act ("Medicaid Act" or "Medicaid"), 42 U.S.C. §§ 1396a *et seq.* provides for a cooperative federal-state public assistance program that affords payment for "necessary medical services" for eligible children of low income families, described as "categorically needy." A state need not participate but if it chooses to do so it must comply with the requirements imposed by the Medicaid Act and the regulations of the Secretary of the Department of Health and Human Services ("Secretary"). 42 U.S.C. § 1396a. The federal government provides a portion of the cost to the participating states of furnishing such medical services. A participating state must develop a state plan for providing medical assistance, and payment of federal funds is conditioned upon the Secretary's approval of the state plan. 42 U.S.C. § 1396. A participating state must include in its plan certain categories of medical services for qualified recipients. Among the mandatory medical service categories is early and periodic screening, diagnostic, and treatment services ("EPSDT") as defined in 42 U.S.C. § 1396d(r). 42 U.S.C. § 1396d(a)(4)(B). "Dental services" are included in EPSDT. Dental services must "at a minimum include

relief of pain and infections, restoration of teeth, and maintenance of dental health." 42 U.S.C. § 1396d(r)(3). *See also* 42 C.F.R. § 441.56(c)(2). A state may limit its medical expenditures to those considered "necessary." 42 U.S.C. § 1396d(r)(5).[1]

The state plan must contain "reasonable standards" for determining eligibility for and extent of medical assistance consistent with the objectives of the act (42 U.S.C. § 1396a(a)(17)) and must provide methods and procedures "necessary to safeguard against unnecessary utilization" of care.

Illinois has chosen to participate in the Medicaid program and has adopted a plan for medical assistance which has been approved by the Secretary. The Illinois plan is administered by the Illinois Department of Public Aid ("IDPA"). Ill.Rev.Stat., ch. 23, ¶¶ 5–1 *et seq.* The Illinois plan limits orthodontic services through its medical assistance program to children with "severe handicapping malocclusions" and requires prior approval. *State Plan Under Title XIX of the Social Security Act Medical Assistance Program* at p. 8. This plan was approved by the Secretary on May 2, 1990. The limitation on orthodontic services was adopted by the IDPA in administrative regulation form effective June 17, 1991. *See* 89 Ill.Adm.Code Ch.1, § 140.421.

Since July 23, 1989, the IDPA has contracted with Delta Dental Plan of Illinois, Inc. ("Delta") to review all prior approval requests for orthodontic services for eligible children. Under this contract, IDPA pays Delta to review requests for prior services and, if approved, Delta pays the dentist for the services provided. Delta has prepared and published a *Criteria Manual* ("manual") which it distributes to providers of dental services. This manual sets forth available services and defines limitations, exclusions and lists of documentation requirements. It further provides that a professional judgment decision of one of Delta's dental consultants, if confirmed by Delta's dental director, becomes the final interpretation of the guidelines.

---

1. The Secretary's regulations for dental care do not expand upon the statutory language. *See* 42 C.F.R. (10–1–90 Ed.) § 441.50 *et seq.*

The current contract provides that Delta shall only approve orthodontic treatment for those categorically needy children through age 20 who have a severely handicapping malocclusion. The contract requires that Delta use the Salzmann Handicapping Malocclusion Assessment Record Index ("Salzmann Index") to determine the degree of severity of the handicapping malocclusion. The purpose of the Salzmann Index is to provide an objective means for establishing priority for treatment of handicapping malocclusions in individual children. The Salzmann Index defines handicapping malocclusion as a condition which constitutes "a hazard to the maintenance of oral health and interfere[s] with the well-being of the child by adversely affecting ... mandibular function or speech." The higher the numerical score, the more severe is the malocclusion.

The contract between the IDPA and Delta requires a score of 42 or above on the Salzmann Index to qualify for prior approval. The use of the Salzmann Index in evaluating the severity of malocclusions and the requirement of a score of 42 or above is disclosed to providers in the manual. The requirement of a score of 42 or above has not been adopted by the IDPA as a rule and, thus, the requirements of the Illinois Administrative Procedure Act (5ILCS 100/1–1. et seq.) were not followed.[2]

In spite of the required score of 42, Delta has granted requests for prior approval in some cases where an individual has scored less than 42 on the Salzmann Index when in the professional opinion of a Delta dental consultant or dental director a severely hand-icapping malocclusion was present. According to IDPA statistics, exceptions were granted for approximately 1.7 percent of the individuals who scored less than 42.

If Delta denies a request for prior approval, the recipient has the right to appeal Delta's determination to the IDPA under the state Administrative Review Act. 305 ILCS 5/11–8. Final administrative decisions of the IDPA are subject to judicial review. 305 ILCS 5/11–8.7. Administrative review is required by the Medicaid Act. 42 U.S.C. § 1396a(a)(3).

Plaintiff, Willie Chappell ("Chappell"), is a categorically needy child. He requested, through his orthodontist, prior approval for orthodontic treatment. Delta scored his malocclusion a 39 under the Salzmann Index and denied his request for prior approval. Chappell's mother appealed the denial to the IDPA. After an administrative hearing, the director issued a final administrative decision on February 2, 1992 granting prior approval. The approval occurred after this suit was filed.[3]

Plaintiff, Hagar Bey ("Bey"), likewise a categorically needy child, also requested prior approval for orthodontic treatment. Delta scored his malocclusion a 33 under the Salzmann Index and denied his request. As of the date of the briefing of these motions, his administrative review hearing had not been held.

The two plaintiffs have brought a class action seeking declaratory and injunctive relief pursuant to 42 U.S.C. § 1983. Defen-

---

**2.** The Illinois Administrative Procedure Act sets forth detailed criteria for adoption of an administrative rule by an agency such as IDPA. *See* 5 ILCS 100/1–1 *et seq.* Section 100/1–70 defines rule as

each agency statement of general applicability that implements, applies, interprets, or prescribes law or policy, but does not include (i) statements concerning only the internal management of an agency and not affecting private rights or procedures available to persons or entities outside the agency, (ii) informal advisory rulings issued under § 5–150, (iii) intra-agency memoranda, or (iv) the prescription of standardized forms.

Plaintiffs have contended that provisions in policy manuals are rules, which Bradley denies but plaintiffs do not contend that the "rules" are invalid for failing to follow the procedure dictated by the Illinois Administrative Procedure Act for adoption. It is very arguable that the requirement of a 42 on the Salzmann Index in order to receive prior approval for orthodontic treatment is a rule within § 100/1–70. *See Sleeth v. IDPA*, 125 Ill.App.3d 847, 81 Ill.Dec. 117, 121, 466 N.E.2d 703, 707 (3d Dist.1984).

**3.** While Chappell's case is moot, nevertheless, he may continue as a class representative because he was a member of the class on the date the class was certified (Nov. 19, 1991). *Sosna v. Iowa*, 419 U.S. 393, 402, 95 S.Ct. 553, 559, 42 L.Ed.2d 532 (1975). No one has contended that he cannot continue to represent the class adequately.

dant is Philip C. Bradley ("Bradley"), Director of the IDPA. Plaintiffs assert that Bradley fails to authorize and provide medically necessary orthodontic treatment to the great majority of categorically needy children and in failing to do so violates the Medicaid Act. As a second claim, plaintiffs assert that IDPA's procedure for providing prior approval for orthodontic treatment is standardless and arbitrary and, therefore, violates the due process clause of the Fourteenth Amendment.

By agreement of the parties, the court certified a plaintiff class pursuant to Fed. R.Civ.P. 23(a) and (b)(2) who, on or after July 23, 1989:

> (a) have been, are, or will be eligible for medical assistance under the federally supported Medicaid program established pursuant to 42 U.S.C. §§ 1396 *et seq.* and administered by the Illinois Department of Public Aid; and (b) whose requests for prior approval for orthodontic treatment have been, are being, or will be denied by the Illinois Department of Public Aid based on a finding of insufficient need for orthodontic treatment.

The parties have filed cross motions for summary judgment. In addition, Bradley has filed a motion to strike affidavits filed by plaintiffs of John J. Byrne, D.D.S. ("Byrne") and Thomas Williams, D.D.S. ("Williams"), and the corresponding paragraphs from plaintiffs' statement of material facts.

## DISCUSSION

### Motion to Strike

■ In support of their motion for summary judgment, plaintiffs have filed affidavits obtained from two orthodontists who contend that at least 85 percent of the children who score between 26 and 41 inclusive on the Salzmann Index have handicapping malocclusions for which orthodontic treatment is medically necessary. The gist of Bradley's objection is that he filed timely discovery requests to determine whether plaintiffs intended to call expert witnesses at trial, together with the substance of the facts relied upon by the expert and any opinions reached. Plaintiffs failed to disclose the existence of either of the two orthodontists or any other information concerning expert testimony.

■ Plaintiffs make the preposterous argument that the names, facts and opinions of Byrne and Williams are not required to be disclosed because they were hired to give opinions in support of their motion for summary judgment and not for trial. Rule 26(b)(4)(A) is clear that the test for disclosure is whether the witness is expected to testify at trial. Wright and Miller, *Civil Practice & Procedure: Civil* § 2030. The purpose of a summary judgment motion is to determine whether there are issues present which require decision at trial. The parties then disclose to the court the admissible evidence through the vehicles of affidavits, depositions, etc. that is available to determine whether there is sufficient disagreement to warrant trial. Rule 56(e) requires that an affidavit must set forth facts that are admissible in evidence and "shall show affirmatively that the affiant is competent to testify...." If the plaintiffs have no intention of offering the evidence at trial it would of course not be admissible. If the witness is not disclosed, and is a Rule 26(b)(4)(B) consulting only expert, he is not competent to testify. Since the witnesses were not disclosed, the appropriate remedy is to strike the affidavits. *Basch v. Westinghouse Electric Corp.*, 777 F.2d 165, 173–175 (4th Cir. 1985). Striking the affidavits is appropriate even more in light of the claim of plaintiffs that they do not intend to use the testimony of these witnesses at trial. Bradley's motion to strike is granted.

### The Statutory Claim

■ As explained above, the State of Illinois has elected to participate in the federal Medicaid program. In return for federal dollars, a participating state must comply with the requirements imposed by the Medicaid Act. *See* 42 U.S.C. § 1396a; *Schweiker v. Gray Panthers*, 453 U.S. 34, 35–39, 101 S.Ct. 2633, 2636–2637, 69 L.Ed.2d 460 (1981). EPSDT services are mandatory which must, at a minimum, include relief of pain and infections, restoration of teeth, and maintenance of dental health.

Bradley does not appear to dispute that under the Medicaid law, the state must provide orthodontic services when medically necessary. Plaintiffs, in turn, do not dispute that the state may decline to provide orthodontic treatment for purely cosmetic reasons, and that a state may impose a prior approval requirement. The parties part ways over IDPA's use of the Salzmann Index for determining prior approval of orthodontic treatment.

IDPA has used the Salzmann Index for determining prior approval since December, 1981. At first it set the cut-off point at 30. For fiscal year 1982 it raised the number to 35. On April 1, 1983 it raised the cut-off point to 40, and on June 22, 1988 it raised it to 42, the current cut-off point. The raise in the cut-off point was mainly for monetary reasons. *See* Bradley's Response to Plaintiffs' Statement of Material Facts, ¶¶ 30–33. The higher the cut-off, the less approved for treatment. Plaintiffs contend that as a result many of the class members have unlawfully been denied necessary orthodontic treatment.

To refute this conclusion, Bradley has produced deposition testimony of Doctors Stephen O. Raibley ("Raibley") and Dennis Barber ("Barber"), Delta's orthodontic consultants. Raibley testified that Delta approved orthodontic treatment for all children who scored 42 or over on the Salzmann Index, and for those children scoring under 42 who, nonetheless, had malocclusions so severe as to have medical need for orthodontic treatment. Raibley further testified that

> malocclusions are not synonymous with handicapping. As the severity goes up the likelihood that it might be handicapping exits [sic], but there really are very few true handicapping malocclusions—very few. (Raibley dep. at p. 31).

He also testified that the criteria he uses in approval of a malocclusion under 42 is his

> professional judgment; that's why we use an orthodontist board or an orthodontist who reviews the claims, and if there is an instance where for some strange reason it

does not score enough points to be treated, and professionally, it would represent a significant problem, it would be approved. (Raibley dep at pp. 32–33)

Barber agreed that a score of 42 does not necessarily correspond to a finding that a severely handicapping malocclusion is present if the malocclusion does not interfere with the patient's ability to chew and talk. On the other hand, if a malocclusion does interfere with the patient's ability to chew and talk, orthodontic treatment would be approved by Delta even if the Salzmann Index score was below 42. (Barber dep. at 17)

> You have to use the basis of your professional experience; you have to evaluate, can the child chew and function normally, based on your previous experience, and there is no possible way that you could score that. (Barber dep. at p. 18)

This testimony tends to show that Delta has interpreted its contractual obligation to IDPA to require it to approve a request for orthodontic treatment in all cases where the child scores a 42 or more on the Salzmann Index regardless of whether the malocclusion is thought to be handicapping, i.e., medically necessary, and to approve a request for treatment in other cases where in the professional opinion of the consultant the malocclusion is handicapping and medical treatment is necessary regardless of the Salzmann score.[4]

If this is, in fact, the standard utilized by Delta, it would appear that IDPA is in compliance with the Medicaid Act. However, this is not the standard published by Delta in the manual it supplies to participating providers. The manual appears to establish a "bright line": it says that

> [t]he Salzmann Handicapping Malocclusion Assessment Record Index will be used to determine the degree of severely handicapping malocclusion. The Department requires a score of 42 or above for approval.

4. The IDPA has by rule defined the term "medically necessary care" to mean "that which is generally recognized as standard medical care required because of disease, disability, infirmity or impairment."

There is also evidence that this is the way IDPA interprets its own rule.[5] The IDPA Act provides for administrative review of aid denials. Plaintiff has furnished the court with a decision by Bradley, dated April 8, 1993, which is while this suit is pending, rejecting an appeal by Jane Doe ("Doe") of a denial of approval for orthodontic treatment. The reason given for denying Doe's appeal is that the Salzmann Index score was 33 points, which is "below the score required for payment." A Salzmann number as a bright line would not comport with Medicaid law because, as Bradley's own consultants agreed, the degree of malocclusion disclosed by the Salzmann Index does not answer the question of whether orthodontic treatment is medically necessary.

Therefore, there is an issue of fact as to the standard employed by the IDPA in determining eligibility for orthodontic care. If the standard is whether orthodontic treatment is medically necessary for the eligible child, the standard will pass muster. If the standard is solely a Salzmann Index score of 42 without regard to the need for medical treatment, then there is violation of the Medicaid Act.

### The Constitutional Claim

Plaintiffs' second claim is that the IDPA criteria for approval of orthodontic treatment is standardless and, therefore, violates the due process clause of the Fourteenth Amendment. The issue is whether the child has a handicapping malocclusion severe enough to require orthodontic treatment. To decide this question requires the exercise of professional judgment. The IDPA understands this and has contracted with Delta who has orthodontists on its professional staff. Plaintiffs claim that a criterion consisting of the professional judgment of an orthodontist is standardless but they do not suggest any alternative standard.

Plaintiffs cite *White v. Roughton*, 530. F.2d 750 (7th Cir.1976), for the due process requirements in the administration of public assistance programs. However, the court in that case condemned "unwritten personal standards." *Id.* at 751. Here, the IDPA uses the exercise of professional judgment. Professional judgment and opinions as standards for determining legal issues has long been the norm in federal as well as state courts. The court holds that a determination of medical need for orthodontic treatment which is made through the exercise of professional judgment of an orthodontist, and which is open to administrative review, satisfies due process.

However, to comply with 42 U.S.C. § 1396a(a)(43)(A), Bradley must inform the categorically needy children of the orthodontic services available. The manual distributed by Delta is presumably the means by which the categorically needy are advised of the available dental services. It states unequivocally that the IDPA "requires a score of 42 or above" on the Salzmann Index for approval. It does not advise the categorically needy that if they have a severely handicapping malocclusion needing treatment they will be allowed orthodontic treatment no matter what their Salzmann Index score. To the extent that the IDPA has given erroneous information as to eligibility requirements for orthodontic treatment, the Medicaid statute is violated. Accordingly, there is no need to reach the constitutional question.

### CONCLUSION

The court finds that the Medicaid Act requires the IDPA to pay for medically necessary orthodontic treatment in cases of severe handicapping malocclusions for the categorically needy children. There is a question of fact whether the Illinois State Plan for Medical Assistance, which was approved by the Secretary, is applied in accord with this requirement of the Medicaid Act. However, it is clear that the manual does not correctly advise the categorically needy of the orthodontic services to which they may be entitled. Since there is a question of fact, the motion of plaintiffs for summary judgment is denied.

---

**5.** The rule adopted by the IDPA in 89 Ill.Adm. Code, ch. I, § 140.421(7) is

Orthodontics (to be approved, the procedure must be to treat a severe handicapping malocclusion or a handicapping dento-facial deformity).

The motion for summary judgment of Bradley is also denied.

IT IS SO ORDERED.